**DIAMOND SHAMROCK CORPORATION,**
Appellant,

v.

**Dan WENDT and Medina Valley A.I. Laboratory, Incorporated, Appellees.**

**No. 13–85–148–CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 29, 1986.

On Rehearing Oct. 9, 1986.

Roger Townsend, Charles W. Hurd, III, Reagan M. Brown, Houston, Robert J. Hearon, Jr., Pamela Stanton Baron, G. Michael Lawrence, Graves, Dougherty, Hearon & Moody, Austin, Kathleen B. Burke, Jones, Day, Reavis & Pogue, Cleveland, Ohio, for appellant.

John O'Quinn, William Fred Hagans, O'Quinn & Hagans, Houston, Robert Summers, Thornton, Summers, Biechlin, Dunham & Brown, San Antonio, for appellees.

Before SEERDEN, UTTER and BENAVIDES, JJ.

## OPINION

SEERDEN, Justice.

Appellant complains of the judgment against it in a suit over the death of Wendt's bull, named "Superman 1024," which was killed on the premises of appellee, Medina Valley A.I. Laboratory, (Medina), by application of an insecticide, Vapona, manufactured by Diamond Shamrock Corporation (Shamrock) and applied to the bull by employees of Medina. Pursuant to jury answers to special issues, the trial court entered judgment, jointly and severally against Shamrock and Medina for $1,500,000 actual damages, and against Shamrock separately for $7,000,000 exemplary damages. The judgment also awarded prejudgment interest and attorney's fees, and granted Medina indemnity against Shamrock for all sums.

We reverse the judgment of the trial court and remand the case for a new trial.

Appellants raise numerous points of error relating to the lack of and sufficiency of evidence both as to liability and damages, actual and exemplary, the manner of calculating interest and attorney's fees, and the granting of indemnity to Medina. In light of our disposition of point of error thirteen, we do not reach any of the other complaints.

In its thirteenth point of error, appellant claims error in the alignment of the parties

for trial and in the allocation of peremptory challenges.

Prior to voir dire examination of the jury panel, appellant's attorney requested that the parties be realigned so that Medina and Wendt be considered plaintiffs and Shamrock be considered the defendant. The trial court rejected this request and indicated that it would allocate twelve peremptory challenges to Wendt, six to Medina, and six to Shamrock. Appellant objected to this proposed allocation of peremptory challenges. He initially requested that the strikes be apportioned six for Wendt, six for Shamrock, and three for Medina. Throughout the voir dire, he continued to complain of the apportionment made by the trial court, and at the conclusion of voir dire, he again objected to having to share his strikes with Medina and proposed that each of the parties, Wendt, Medina, and Shamrock, be allotted six peremptory challenges. This request was also denied by the trial judge and twelve peremptory challenges were given to Wendt, six to Medina, and six to Shamrock.

The number of peremptory challenges allocated to each party is governed by Tex.R.Civ.P. 233. This rule was re-written in 1984 and presently incorporates the concepts of both the old Rule 233 and former Tex.Rev.Civ.Stat.Ann. art. 2151a (Vernon Supp.1985).

■ The existence of antagonism, *per se*, is a question of law. *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914, 919 (Tex. 1979). In determining whether antagonism exists, the trial court must consider the pleadings, information disclosed by pre-trial discovery, information and representations made during voir dire of the jury panel, and any information brought to the attention of the trial court before the exercise of the strikes by the parties. *Garcia v. Central Power and Light Co.*, 704 S.W.2d 734, 736 (Tex.1986); *Patterson* at 919. The antagonism must be finally determined after voir dire and prior to the exercise of the strikes of the parties. *Garcia* at 736.

■ The nature and degree of the antagonism, and its effect on the number of peremptory jury strikes allocated to each litigant or side, are matters left to the discretion of the trial court. *See King v. Maldanado*, 552 S.W.2d 940, 943 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r. e.); *Dean v. Bitulthic Co.*, 538 S.W.2d 825, 826 (Tex.Civ.App.—Waco 1976, no writ). In considering the number of peremptory challenges to be allocated between the litigants or sides, the trial court must determine, based on the information gleaned from pleadings, pre-trial discovery, and representation made during voir dire examination, what antagonism, if any, exists between the parties. *Scurlock Oil Company v. Smithwick*, 29 Tex.Sup.Ct.J. 449, 451–52 (June 25, 1986). In multiple party cases, the trial judge shall equalize the number of peremptory challenges so that no litigant or side is given an unfair advantage and so as to promote the ends of justice. TEX.R.CIV.P. 233. While the rule uses the term "equalize," a better description of the function of the trial judge in deciding upon the number of peremptory challenges each litigant will receive is the term "allocate." *See Garcia* at 736. Exact numerical equality between sides is not the purpose of equalization of peremptory challenges. Rather, the purpose is to equalize the positions of the parties to prevent one side, antagonistic among the parties on certain matters of fact with which they will be concerned, but primarily united in opposition to the other side, from selecting the jury. *Patterson* at 920.

Though both Medina and Shamrock filed general denials, it was clear from the conversations with the court prior to jury selection that neither was claiming that Wendt was in any way responsible for the loss of Superman. While Medina never admitted liability, it was also clear from the conference between the attorneys and the trial court, as well as statements made in voir dire, that both Wendt's presentation and Medina's defense was the improper labeling by Shamrock. In fact, the only possible justification Medina had for its employees applying the highly toxic insecti-

cide to the animal was Shamrock's insufficient labeling and other failures; the same claims made by Wendt against Shamrock.

At the hearing prior to the voir dire relating to the alignment of the parties, it was brought out that neither Medina nor Shamrock contended that Wendt should not be compensated for the loss of his bull. Each of them claimed the other to be responsible for the loss. It is also apparent that Wendt and Medina had substantial common interests. Medina's insurance carrier had denied liability and refused to defend Medina in the case. While no agreement had been reached between the attorneys for Wendt and Medina, they had discussed proceeding jointly in a separate suit against Medina's insurance carrier, should Shamrock "put it all off" on Medina. The attorneys for Wendt and Medina had several conversations about striking the jury and discussed "a profile of a good juror for both of us that would be in common." Medina's attorney candidly admitted that he only attended one deposition in the case to hold down expenses for Medina. He frankly told the court that "the real controversy is between these two guys (Wendt and Shamrock)" and "We are really interested only in getting from Diamond Shamrock what the plaintiff (Wendt) might be able to get from us." The attorney for Wendt admitted that he turned down Medina's offer to take a judgment against it and go against its insurance company because it would "mess up my lawsuit against you (Shamrock)."

At the outset of the voir dire, attorney for plaintiff, after briefly stating the facts surrounding the death of Superman, said "Mr. Wendt's very valuable bull was killed at Medina Valley because Diamond Shamrock's chemical killed it." This theme, that the death was caused because of the chemical (not the action of Medina's employees) continued to be emphasized by both Wendt and Medina through the entire voir dire. In addition, Wendt's attorney qualified the jury as to gross negligence and punitive damages with respect to the conduct of Shamrock, but not of Medina. Wendt's only reference to Medina's conduct during voir dire was informing the jury panel, "as to Medina Valley, the evidence will be that they applied the Vapona to Superman and the issue in the case, I believe what the court is going to ask you about that is whether they did so negligently or whether the question would be they did so negligently or whether they were misled by the labels and it is not their fault."

"What I want to ask you is this: Do you feel that a business that handles and cares for animals or cares for other people's property ought to do so carefully? Do you agree with that?" Not suprisingly, no one on the panel voiced disagreement.

Medina never expressly denied negligence but inquired of the prospective jurors if they would require Wendt and Diamond Shamrock to prove their negligence. It then proceeded to comment that both Wendt and Medina were contending that Vapona was not fit and was not as represented. Medina also never commented on damages in its voir dire.

Shamrock's voir dire position essentially was that the Vapona had proper instructions on the label and that the person using the product should be responsible for following the instructions. It also complained that Wendt's figures as to the value of Superman were inflated.

■ We have found no case similar to this case relating to proper alignment of the parties. The cases dealing with alignment have all parties on one side, whether plaintiff or defendant, with a common goal, see *Garcia*, or situations in which a party on one side has settled with a party on the other side, see *Scurlock Oil Co.* at 450. Here, there is no settlement between any of the parties, yet the degree of plaintiff's antagonism toward one of the defendants is not the same as toward the other defendant. Nevertheless, plaintiff was actively seeking recovery against both defendants. Under this circumstance, we hold the trial court did not err in failing to align Medina and Wendt on the same side.

The number of peremptory challenges allotted to each litigant presents a different problem.

■ The term "equalize" the peremptory challenges is somewhat misleading, yet that is exactly what the trial court did in this case. Since the two defendants were obviously antagonistic to each other, the judge determined they were each entitled to the same number of strikes. To "equalize," it awarded plaintiff twelve strikes. While the peremptory challenges were equal on each side, the allocation of twelve strikes to Wendt, six to Medina, whose interests were so closely identified with Wendt's and only six to Shamrock, resulted in an unfair advantage to Wendt and put Shamrock at a substantial disadvantage.

While the trial court has discretion in allocating peremptory challenges in multiple party cases, such discretion is not without limitations. *Patterson* at 920. It is not necessary for us to decide if appellant's original request that peremptory challenges of six for Wendt, three for Medina, and six for Shamrock should have been granted, although we feel, under the circumstances, granting the request would not have been an abuse of discretion.

We hold that it was error for the trial court to award Wendt twelve peremptory challenges and Medina, who, though aligned on the opposite side, had such common interest with Wendt and who had consulted with Wendt on the profile of jurors mutually advantageous to them, six strikes, and only allow Shamrock six. Such allocation of strikes had the practical effect of giving those litigants united against Shamrock eighteen peremptory challenges and giving Shamrock six.

This trial was hotly contested insofar as the liability was concerned between Wendt and Medina on one side and Shamrock on the other, and the trial court's error in allocating extra peremptory challenges resulted in a materially unfair trial and harm is presumed as a matter of law. *Garcia* at 737; *Lopez v. Foremost Paving, Inc.*, 29 Sup.Ct.J. 371, 373, 709 S.W.2d 643 (Tex. 1986).

Appellant's point of error thirteen is sustained.

Because our decision on point of error thirteen controls the disposition of this case, we need not comment on appellant's other points of error. Tex.R.Civ.P. 451.

The judgment is REVERSED and the case REMANDED for a new trial.

## OPINION ON MOTIONS FOR REHEARING

All parties have files motions for rehearing. In Wendt's motion for rehearing, the first eight points complain of our holding with regard to the allocation of peremptory challenges.

In our opinion, we found no error in the alignment of the parties, but we found the trial court erred in awarding Wendt twelve peremptory challenges, and Medina and Shamrock each six such challenges. In *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914, 920 (Tex.1979), the Supreme Court held that the extent to which "equalizing" is allowed is dependent upon several factors, including: the circumstances of the case, information available to the trial court at the time it awards the challenges, the extent and degree of antagonism, whether the parties collaborate in selecting the jurors to be struck, and other considerations to promote the ends of justice and prevent unequal advantage. The discretion of the trial court in allocating strikes is not unbridled.

We believe that the information before the trial court when it made its allocation clearly showed an abuse of its discretion. Wendt and Medina had discussed the profile of a good juror for both of them. Medina's insurance company had refused coverage. Medina contended throughout that the real controversy was between Wendt and Diamond Shamrock. Although Wendt did not negate Medina's negligence in his voir dire, his position was clear that Diamond's dangerous insecticide killed his bull. The information before the trial court at the time it made its allocation showed little or no real antagonism between Medina and

Wendt. It was apparent from the beginning that neither defendant attributed any negligence to Wendt. The only issue which the two defendants could have been aligned on was damages. However, Medina did not ever discuss damages before the jury on voir dire.

It is the duty of the trial judge, upon proper motion, to equalize the number of challenges so that *no litigant* or side is given an unfair advantage. *See* Tex.R. Civ.P. 233. The "equalization" should be consistent with the facts known to the trial court at the time it makes its allocation. This process is particularly critical in multiparty litigation where the degree of antagonism between one defendant and the plaintiff is significantly less than the antagonism between the plaintiff and another defendant. The rule has been consistently used to "equalize" plaintiff's strikes with that of the defendant's in multi-party cases. The true intent of the rule, however, is to promote the ends of justice and ensure that no litigant is given unfair advantage regardless of whether the litigant is plaintiff or defendant.

In this case, the allocation did result in an unfair advantage for both Wendt and Medina. Wendt was given twice as many strikes as Diamond Shamrock. The information known to the trial judge at the time it made its allocation showed little or no real antagonism between Wendt and Medina. The end result, when reviewed from Diamond Shamrock's point of view, was an allocation of peremptory challenges of a ratio of nearly three to one against it.

In its motion for rehearing, Wendt cites *Gulf Offshore Co. v. Mobil Oil Corp.*, 594 S.W.2d 496 (Tex.Civ.App.—Houston [14th Dist.] 1979, *affirmed in part, vacated in part on other grounds*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1982)) as authority for the proposition that an equalization of strikes similar to the one in this case was not an abuse of discretion. In *Mobil*, the jury voir dire was not part of the record. The court held that the record before it did not reflect harm in the jury selection process. Appellant also urges that this opinion is in conflict with our opinion in *Scurlock Oil Co. v. Smithwick*, 701 S.W.2d 4 (Tex.App.1985), *rev'd on other grounds*, 29 Tex.Sup.Ct.J. 449 (1986). We first note that in its opinion, the Supreme Court reviewed the apportionment of preemptory challenges in *Smithwick* and, while coming to the same conclusion as this Court, did so for different reasons. The facts in this case are distinguishable from *Smithwick* and our decision here is consistent with the Supreme Court's ruling. We have considered the other matters raised in Wendt's points of error one through eight and find them to be without merit. Wendt's points of error one through eight in his motion for rehearing are overruled.

■ In Wendt's point of error number nine on rehearing and Medina's first point on rehearing, it is contended that we erred in reversing the trial court's judgment awarding Medina Valley indemnity against Shamrock. Shamrock also contends, in its first point of error on rehearing, that we should have held that the trial court erred in awarding Medina indemnity against Shamrock.

The judgment of the trial court grants indemnity against Diamond Shamrock for all sums for which Medina was held liable to Wendt. Generally, when one party appeals from a judgment, a reversal as to that party will not justify a reversal as to the other nonappealing party, but such rule does not apply where the respective rights of the appealing and nonappealing parties are so interwoven or dependent on each other as to require a reversal of the entire judgment. *Turner, Collie & Braden, Inc. v. Brookhollow*, 642 S.W.2d 160 (Tex.1982). We hold that the liability of Medina and Shamrock are so interwoven so as to require a reversal as to both parties in this case.

The judgment of the trial court is REVERSED and the cause REMANDED for a new trial.