

**NUMBER 13-17-00652-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**GUADALUPE GUERRA JR.,**                                                    **Appellant,**

**v.**

**ACE AMERICAN INSURANCE COMPANY
AS SUCCESSOR OF INA OF TEXAS,**                              **Appellee.**

---

### On appeal from the 319th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Chief Justice Contreras**

Appellant Guadalupe Guerra Jr., pro se, appeals the trial court's judgment setting

aside a workers' compensation award pursuant to a suit filed by appellee, ACE American

Insurance Company as successor of INA of Texas (ACE).   By three issues, Guerra

contends the trial court erred by (1) realigning the parties at trial, (2) issuing an erroneous

jury charge, and (3) "allowing opposing counsel to make materially false statements to the jury." We affirm.

## I. BACKGROUND

Guerra was injured in 1990 while working for Reynolds Metals Company, which had workers' compensation insurance through ACE's predecessor. Attorneys for Guerra and ACE's predecessor entered into an "Agreed Final Judgment" on April 19, 1996, providing for a lump sum payment of $50,000 to Guerra in exchange for his release of any claims regarding past medical expenses arising from the workplace injury. The "Agreed Final Judgment" also stated:

> With regard to future medical expenses, [ACE] agrees to pay all reasonable and necessary medical expenses incurred as a result of treatment by Dr. Gilbert Meadows of San Antonio, Texas, only.
>
> 1.     It is specifically agreed that [ACE] shall not be responsible for any medical treatment incurred in the future by any doctor or health care provider, other than Dr. Gilbert Meadows, unless said expenses were incurred during or as a result of surgery by Dr. Gilbert Meadows.
>
> 2.     It is agreed, moreover, that [ACE] shall not be responsible for any expenses incurred by any other medical doctor, chiropractor, therapist, or health care provider except as a result of surgery as noted . . . above.

An addendum to the "Agreed Final Judgment" stated:

> The term "treatment" means lifetime medical and surgical care. Surgical care shall include all hospital, medical, therapeutic, and pharmaceutical treatment ordered by Dr. Gilbert Meadows, or his surgical assistants under the direction of Dr. Meadows, in order to allow a full recovery from the effects of surgery.

Later in 1996, Guerra underwent spinal fusion surgery performed by Dr. Meadows in San Antonio. Dr. Meadows continued to provide treatment until 2003, when he advised Guerra that he was no longer accepting workers' compensation patients. Subsequently, Guerra received treatment from Abimael Perez, M.D., a physician located in Corpus

2

Christi. ACE and its predecessors continued to cover that treatment until January 2013, when Dr. Perez also stopped accepting workers' compensation patients.

At issue in this case is Guerra's request in 2015 to be reimbursed a total of $4,062.75 for: (1) treatment by Misty Durbin, a chiropractor; (2) an orthopedic bed; (3) orthopedic shoes and socks; and (4) travel expenses. ACE refused the request, so Guerra filed a claim for compensation with the Texas Department of Insurance, Division of Workers' Compensation (the Division). On July 21, 2015, the Division issued a final award granting Guerra all of the benefits he requested. ACE then filed the instant suit in district court seeking judicial review of the award.

In December of 2015, ACE filed a motion for no-evidence summary judgment arguing that "[t]here is no evidence of any attempt, much less a successful one, to set aside" the 1996 agreed judgment. The trial court denied the motion but granted permission to appeal under Texas Rule of Civil Procedure 168. *See* TEX. R. CIV. P. 168. We concluded that the petition for permissive appeal failed to meet the jurisdictional requirements for such an appeal and dismissed it. *ACE Am. Ins. Co. v. Guerra*, No. 13-16-00628-CV, 2017 WL 929485, at *2 (Tex. App.—Corpus Christi–Edinburg Mar. 9, 2017, no pet.) (mem. op.) (concluding that the case "does not meet the strict jurisdictional requirements" for permissive appeals provided by statute and rule).

On July 21, 2017, ACE filed a "Motion to Re-Align the Parties" arguing that "[p]ursuant to Article 8307, Section 5, Vernon's Annotated Civil Statutes, [Guerra] has the burden of proof as he is the party claiming compensation." The trial court granted the motion on September 12, 2017, and rendered an order stating that Guerra shall be designated as the plaintiff, ACE shall be designated as the defendant, and Guerra "as the

3

claimant of compensation shall have the burden of proof as required by law."

A jury trial took place later that day. Guerra, appearing pro se, was the only testifying witness. He explained how he was injured in 1990:

> While at work I was assaulted by a co-worker who, I guess, they call it the sucker punch. I never saw it coming. Pulled the chair from underneath me and my back slammed against the—the—the foundation which is concrete slab and the metal control panel against my head and my neck.

Guerra stated that, under the 1996 agreed judgment, he received "lifetime medical plus up to $50,000 for back pay wages." He testified that, after his surgery, a psychiatrist diagnosed him with post-traumatic stress disorder and depression, so Dr. Meadows prescribed Xanax and Viagra, among other medications. When Dr. Meadows stopped seeing him, Dr. Perez continued the treatment and medications. According to Guerra, Durbin, as a chiropractor, could not prescribe medications but did prescribe orthopedic supplies. Guerra stated that ACE is now "trying to say that they no longer need . . . to be responsible in taking care of me based on whatever." He further stated: "[A]s far as I know lifetime healthcare and Dr. Gilbert Meadows are not a package deal so I'm still entitled to lifetime healthcare with or without Dr. Gilbert Meadows and that's what I'm fighting for right now."

On cross-examination, Guerra acknowledged that he had a "nerve conduction study test" in 2006 which showed no abnormalities. He further conceded that, in 2001, he sent a letter requesting that ACE's predecessor provide him with a cell phone. The letter explained that "[o]ne of the needs[] of a disabled person is being able to communicate in case of an emergency." Guerra agreed with ACE's counsel that, in 2011, he appeared at an informal workers' compensation conference wearing "foam rubber Crocs." He further admitted that he was involved in a motor vehicle accident in 2000, and

4

that he suffered two slip-and-fall accidents at Whataburger and Walmart in 2006 and 2011, respectively.

In closing, Guerra claimed that he was entitled to new orthopedic socks and shoes every six months "according to the workers' comp law." He explained: "I understand that Dr. Gilbert Meadows was supposed to be my primary doctor, but I didn't know anything about that or understood exactly what the contract was saying; only that the lifetime healthcare was there for me when I need healthcare."

The jury charge asked one question: "Is [ACE] under the Agreed Judgment between the parties dated April 19, 1996, responsible for the medical bills incurred by [Guerra] in 2015 in the amount of $4,062.75?" The charge instructed the jury as follows: "A 'yes' answer must be based on a preponderance of the evidence unless you are told otherwise. . . . If you do not find that a preponderance of the evidence supports a 'no' answer, then answer 'yes.'" The jury answered "No." The trial court then rendered judgment that "[Guerra] take nothing as payment for medical treatment against [ACE]." This appeal followed.

## II. DISCUSSION

### A.    Realignment of Parties

By his first issue on appeal, Guerra contends the trial court erred by granting ACE's motion to realign the parties. The trial court has broad discretion in ordering the alignment of parties, and its actions will not be disturbed on appeal except for the abuse of that discretion. *Meyerland Cmty. Imp. Ass'n v. Temple*, 700 S.W.2d 263, 268 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Pitts v. Ashcraft*, 586 S.W.2d 685, 698 (Tex. App.—Corpus Christi 1979, writ ref'd n.r.e.). When a party contends that the trial court

5

abused its discretion in conducting a trial, the burden is on the complaining party to show that the trial was materially unfair. *King v. Maldonado*, 552 S.W.2d 940, 943 (Tex. App.—Corpus Christi 1977, writ ref'd n.r.e.). We will not reverse a judgment for error relating to the conduct of the trial unless "probable prejudice" is shown. *Ocean Transport, Inc. v. Greycas, Inc.*, 878 S.W.2d 256, 269 (Tex. App.—Corpus Christi 1994, writ denied); *see Hawthorne v. Guenther*, 917 S.W.2d 924, 932 (Tex. App.—Beaumont 1996, writ denied); *see also* TEX. R. APP. P. 44.1(a) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of:  (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals.").

Guerra cites Texas Labor Code § 410.303, part of the Texas Workers' Compensation Act (TWCA), for the proposition that "[t]he party appealing the final decision of the [Division] bears the burden of proof by a preponderance of the evidence." *See* TEX. LAB. CODE ANN. § 410.303 ("The party appealing the decision on an issue described in Section 410.301(a) has the burden of proof by a preponderance of the evidence."); *see also id.* § 410.301(a) ("Judicial review of a final decision of the [Division] regarding compensability or eligibility for or the amount of income or death benefits shall be conducted as provided by this subchapter.").

In response, ACE argues that, because Guerra's injury occurred prior to January 1, 1991, the current version of the TWCA does not apply to this case.  Instead, ACE contends that the earlier version of the workers' compensation law, Title 130 of the Texas Revised Civil Statutes, applies.  And ACE argues that, under the old law, "in a scenario

6

where the carrier filed a trial de novo appeal" of an award by the Industrial Accident Board (the Board), the Division's predecessor, "it was required that the injured worker to [sic] file a counter-claim and pursue his burden to prove that the requested medical treatment was reasonable, necessary, and related to his compensable injury." *See Dallas Indep. Sch. Dist. v. Porter*, 709 S.W.2d 642, 643 (Tex. 1986) (noting that the appellee claimant "filed a counterclaim seeking workers' compensation benefits, as is required in this de novo proceeding"); *Hardware Mut. Cas. Co v. Clark*, 360 S.W.2d 921, 922 (Tex. App.—Waco 1962, writ dism'd) ("When the carrier filed the suit and the employee entered his appearance, there was nothing further for it to do in the way of prosecuting its claim. . . . When the appeal from the award reached this status the award of the Board was vacated and was no longer in force, and the court having acquired jurisdiction, the burden of obtaining judgment for compensation in the court where the case is pending rests upon the claimant." (quotations omitted)); *Associated Indem. Corp. v. Peel*, 157 S.W.2d 416, 417–18 (Tex. App.—San Antonio 1941, writ dism'd) ("When the insurance carrier appealed to the District Court from the award made by the Board on the principal claim, such appeal had the effect of depriving the Board of all jurisdiction of the principal as well as incidental claims, and of transferring to the District Court appellee's claim and all other matters which could have been adjudicated by the Board, whether affirmatively disposed of therein or not. . . . Appellee's remedy in such case was to exercise his privilege to assert his claim by way of cross-action in appellant's appeal in the District Court.").[1]

---

[1] Though the parties obviously differ on which version of the TWCA is applicable, neither has cited any authority—in the trial court or in this Court—to support their respective positions. ACE cited the old law and caselaw applying it, but it did not cite any authority establishing that the old version, rather than the current version, applies in this case.

We agree with ACE. The current version of the TWCA was enacted in 1989, and the implementing legislation provided that the Division "shall process claims for injuries occurring before January 1, 1991, in accordance with the law in effect on the date that the injury occurred, and the former law is continued in effect for this purpose." Act of Dec. 11, 1989, 71st Leg., 2d C.S., ch. 1, § 17.18, 1989 Tex. Gen. Laws 122, 122; *see City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) ("The statute in effect at the time of injury controls."); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Reyna*, 897 S.W.2d 777, 778 (Tex. 1995) (per curiam) (applying the version of the TWCA in effect at the time of the injury, not the version in effect at the time of suit). Article 8307, § 5 of the old law provided in part that, if a party seeks judicial review of a Board order, "the court shall . . . determine the issues in such cause, instead of the Board, upon trial de novo, and the burden of proof shall be upon the party claiming compensation." Act of Mar. 28, 1917, 35th Leg., R.S., ch. 103, 1917 Tex. Gen. Laws 269, 269 (repealed 1989); *see Martinez v. Second Injury Fund of Tex.*, 789 S.W.2d 267, 276 (Tex. 1990).

In any event, even if the trial court erred in granting the motion to realign, that error would not be reversible because no probable prejudice has been shown.[2] *See Ocean Transport, Inc.*, 878 S.W.2d at 269; *see also* TEX. R. APP. P. 44.1(a). In granting ACE's motion to realign the parties, the trial court ordered Guerra to be designated as the plaintiff and ACE to be designated as the defendant. But the charge nevertheless instructed the jury to find ACE liable only "[i]f you do not find that a preponderance of the evidence supports a 'no' answer." That is, the burden of proof remained on ACE to show by a preponderance of the evidence that Guerra was *not* entitled to the compensation he

---

[2] In his brief, Guerra does not address whether the claimed error is reversible.

8

requested.  Though the charge instructions were confusing in this case, we generally assume that the jury properly followed the charge's instructions.  *See, e.g.*, *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 167 (Tex. 1982).  Guerra has not shown that the trial court's granting of ACE's motion to realign probably prejudiced him.  *See Ocean Transport, Inc.*, 878 S.W.2d at 269; *see also* TEX. R. APP. P. 44.1(a).

Guerra's first issue is overruled.

## B.     Jury Charge

Guerra argues by his second issue that the jury charge contained error.  He argues that "[h]ad the Court not erred it would have placed the burden of proof on the true appealing party, the insurance party."  He contends that "this case had nothing to do with the Agreed Final Judgment" and that, "[i]n 2015, the question for the jury would have been one regarding treatment or items prescribed by either Dr. Abimael Perez or Dr. Misty Durbin."  He further argues that the trial court should have reviewed the Division's award under a substantial evidence standard.  *See* TEX. LAB. CODE ANN. § 410.255 ("(a) For all issues other than those covered under Section 410.301(a), judicial review shall be conducted in the manner provided for judicial review of a contested case under Subchapter G, Chapter 2001, Government Code.  (b) Judicial review conducted under this section is governed by the substantial evidence rule."); *see also* TEX. GOV'T CODE ANN. § 2001.174 (describing substantial evidence review).

Guerra does not cite authority regarding jury charge error.  *See* TEX. R. APP. P. 38.1(i).  Regardless, all aspects of this multifarious issue are dependent on Guerra's contention that the current version of the TWCA applies, which we have already rejected.  Accordingly, we overrule Guerra's second issue.

9

## C.   "Materially False Statements"

By his third issue, Guerra contends that ACE's counsel "made statements to the jury that were deliberately false."[3] Specifically, he contends that "opposing counsel falsely claimed that only medical services ordered by Dr. Gilbert Meadows were compensable." He notes that, even though the 1996 agreed judgment "restricted medical services to those prescribed by Dr. Meadows," it "did not consider that at some future date, Dr. Meadows might no longer be able or willing to continue" serving as his treating physician.

Guerra appears to complain of ACE's counsel's opening statement at trial, which began as follows:

> Ladies and gentlemen of the jury, Mr. Guerra got hurt back in 1990 at work in an argument with a co-employee and ended up with the co-employee, I think, kicking the chair out that he was sitting in so [sic] jarring to his low back. He ended up never going back to work and eventually having a one level fusion done at L4-5 level in November of 1996.
>
> He was represented by an attorney throughout the process and they settled the case with the insurance carrier about half a year before he had the surgery in April of 1996 and he got a lump sum amount. You'll see the whole agreed judgment, $50,000, back in 1996 and lifetime medical, but the parties agreed that [] the lifetime medical had to be performed or at the direction of the surgeon which was Dr. Meadows out of San Antonio.
>
> He's the one that eventually did his surgery after the agreed judgment had already been signed but both parties knew that's where he might be heading, so when they settled the case his attorney wanted to make sure he was taken care of if he had the surgery. There's language in the judgment that talks about treatment by Dr. Meadows or at his direction by his surgical assistants to have the surgery and recover from the surgery.

---

[3] In his argument as to his second issue, Guerra asserts that the trial judge "seemed to be out of it in terms of knowledge regarding the correct way to try a case of this type" and that ACE's trial counsel "must have known that his special issue had nothing to do with the matter being litigated" but "[n]onetheless, he submitted it and the Court accepted it." In his third issue, he argues ACE's counsel "deliberately tried to confuse the jurors." Though Guerra is a pro se litigant and is therefore not subject to the Texas Disciplinary Rules of Professional Conduct, we note that "*ad hominem* attacks on courts, opposing parties, or opposing counsel are ineffective and inappropriate, whether made by attorneys or pro se litigants." *Gleason v. Isbell*, 145 S.W.3d 354, 358 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (Frost, J., concurring and dissenting).

It specifically says that it's not—the future medical is limited to Dr. Meadows and not to chiropractic or physical therapists. The insurance company did not want a chiropractor running the show, so to speak, for lifetime medical on this claim; the parties agreed with Dr. Meadows.

Guerra did not object to these remarks at trial. "Error as to improper jury argument must ordinarily be preserved by a timely objection which is overruled." *Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 680 (Tex. 2008); *see* TEX. R. APP. P. 33.1(a). "Typically, retraction of the argument or instruction from the court can cure any probable harm, but in rare instances the probable harm or prejudice cannot be cured" and in such instances, complaint about the argument may be made for the first time on appeal. *Penalver*, 256 S.W.3d at 680. "To prevail on a claim that improper argument was incurable, the complaining party generally must show that the argument by its nature, degree, and extent constituted such error that an instruction from the court or retraction of the argument could not remove its effects." *Id.* at 680–81. Argument that "strikes at the appearance of and the actual impartiality, equality, and fairness of justice rendered by courts" is considered incurably harmful. *Id.* at 681.

We are not persuaded that the comments at issue were improper, much less incurably so. As Guerra notes and as set forth above, the 1996 judgment did not explicitly contemplate that Dr. Meadows might someday withdraw from serving as his treating physician. However, it did state that ACE would be responsible for any expenses "incurred during or as a result of surgery" by Dr. Meadows. In any event, the entire 1996 judgment was entered into evidence and was available to the jury. Guerra does not dispute the validity of the 1996 judgment; nor does he argue that the evidence before the jury, which included the 1996 judgment, was insufficient to support the verdict. Under these circumstances, we conclude counsel's remarks regarding the terms of the 1996

11

agreed judgment were not incurably prejudicial. Accordingly, Guerra waived the issue by failing to object. *See* TEX. R. APP. P. 33.1(a). We overrule Guerra's third issue.

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS<br>Chief Justice

Delivered and filed the
6th day of June, 2019.